In re: **FVC.COM SECURITIES LITIGATION**

Thomas Williams, Plaintiff,

and

John Davis; John Petote; E.A. Von Bergen; Neal Harvey; Tom Tresnowski; Charles Daniel; Chris McGadden; Wayne Buske, on behalf of themselves and all others similarly situated, Plaintiffs—Appellants,

v.

FVC.COM Inc.; Ralph Ungermann; Richard M. Beyer; James O. Mitchell, Defendants—Appellees.

No. 00–15555.

D.C. No. CV–99–01815–CRB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2001.

Decided March 15, 2002.

courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Before CANBY, HAWKINS and GOULD, Circuit Judges.

MEMORANDUM *

Plaintiffs appeal the dismissal of their complaint for failure to state a claim of securities fraud in violation of §§ 10(b) and

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5. The plaintiffs are a class of shareholders of FVC.COM Inc. ("FVC"), a corporation that provided broadband network video applications. The defendants are FVC, the chairman of its board, and several of FVC's principal officers. The district court dismissed the plaintiffs' consolidated complaint, without leave to amend, for failure to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4. We affirm.

The precipitating event for this action was FVC's revision of its unaudited report for the fourth quarter of 1998 ("4Q98"), after its January 1999 announcements of 4Q98 revenues resulting in a profit of $1.2 million. The revision came in April 1999 and was substantial; it provided for a loss of $6 million instead of a profit of $1.2 million.

The heart of plaintiffs' complaint concerns Nortel's restructuring of its method of doing business with FVC, a restructuring that FVC announced in April 1999 and described as having occurred during the first quarter of 1999. It was this restructuring that caused the defendants to revise FVC's 4Q98 unaudited report. The plaintiffs' principal allegation, primarily contained in paragraph 22 of the complaint, is that FVC and the individual defendants knew of this restructuring in 4Q98 or at least before FVC stated its rosy unaudited revenues in January 1999.

The complaint utterly fails, however, to allege facts raising a strong inference of this early scienter. The complaint alleges that during 4Q98:

representatives of Nortel advised [FVC] that it would substantially change its relationship with FVC in a manner that would dramatically reduce FVC's revenues for the quarter.... Specifically, representatives of Nortel advised FVC during this time period that it would no longer stock inventory shipped by FVC, but instead would only accept orders already earmarked for specific customers on a "drop ship" basis.... Nortel representatives also advised FVC during the quarter that Nortel would no longer assume the obligation to pay for any FVC products but would only do so when these products were shipped to the FVC end user. Contrary to their prior agreement, Nortel would return any FVC products held in its inventory and not shipped to end users to FVC without any payment obligations.

In other words, the plaintiffs alleged all of the restructuring that FVC announced in April, asserting that it all had been revealed to FVC in 4Q98.

The allegations are fatally defective under our decision in *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999). *See also Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir.2001). Although the complaint alleges that certain communications took place, it fails to allege facts of time, place, parties and the sources from which such information was gleaned. *See Silicon Graphics*, 183 F.3d at 984. The complaint contains nothing to suggest that the plaintiffs' allegations that FVC and the individual defendants knew all about the Nortel restructuring in 4Q98 is based on anything other than mere speculation. That is precisely the kind of allegation that the PSLRA is designed to defeat at the pleading stage.

The plaintiffs contend that, sympathetically construed, paragraph 22 of their complaint contains permissible inferences of scienter, which can be drawn from facts alleged there and elsewhere in the complaint. Inferences must not be made

against the plaintiff in dismissing under Fed.R.Civ.P. 12(b)(6). But the inferences that the plaintiffs put forth are pure speculation. Cut to the bare essentials, the inference that the plaintiffs would have us draw is that, because the defendants admit that they knew something later and the "something" is important, they must have known it earlier. That kind of bare inference by hindsight is not permitted under the PSLRA. *See Silicon Graphics,* 183 F.3d at 988. It does not require inferences to be drawn against the plaintiffs to rule that they have not alleged facts giving rise to a *strong* inference of scienter. *See* 15 U.S.C. § 78u–4(b)(2); *Silicon Graphics,* 183 F.3d at 979.

■ Nor do Generally Accepted Accounting Principles ("GAAP") provide the necessary inference of scienter. The plaintiffs contend that the defendants necessarily violated Financial Accounting Standards Board Statement ("FAS") No. 48 by originally recognizing improper revenues in their 4Q98 unaudited report. Mere misapplication of GAAP, however, does not establish scienter. *See In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir.1994). Neither does the operation of any of the other accounting provisions cited by the plaintiffs. Accounting Principles Board Opinion ("APB") No. 20 states certain principles for correction of errors in financial statements of a *prior* period; it does not apply in terms to correction of a prior unaudited statement for the same period, as occurred here. Moreover, APB 20 provides for correction when there has been an "oversight or misuse of facts" in the prior period, but does not state that the oversight or misuse must have been knowingly misleading or the result of deliberate recklessness. In short, APB 20 cannot supply the inference of scienter that the plaintiffs need. FAS 16, which elaborates on portions of APB 20, provides no new or additional material to help the plaintiffs.

Nor does U.S. Auditing Standards § 560 assist the plaintiffs. It permits adjustment of a financial statement when, among other things, a new event provides additional evidence regarding a condition that existed at the date of the statement being revised. But the fact that Nortel's inventory needed to be handled differently as of December 31, 1998, because of a restructuring during the following quarter that cast the inventory in a new light does not raise any inference concerning whether any of the defendants *knew* that fact in December 1998, or even in January 1999, or that they acted with deliberate recklessness at those times.

■ The plaintiffs' resort to the defendants' stock sales is equally unavailing. A plaintiff pleading insider trading to prove scienter must allege "unusual" or "suspicious" stock sales. *Ronconi,* 253 F.3d at 435. Neither the individual sales here nor the sales in combination support a strong inference of scienter. The alleged insider sales occurred during February 1999. Altogether, however, the individual defendants sold only 13% of their total holdings (shares and vested options), a far smaller proportion than one would expect if the sellers knew that revenues were heavily overstated and soon to be restated. The chairman of FVC's board sold only 7% of his holdings, and he was the largest shareholder. The only defendant who sold more than 30% of his holdings held the least significant office and the fewest number of shares (less than 3% of the defendants' combined holdings) of any of the defendants. These sales are hardly distinguishable from those in *Silicon Graphics* or *Ronconi,* where stock sales did not suffice to show scienter. *Id.* at 434–35; *Silicon Graphics,* 183 F.3d at 987–88. Nor can we draw any strong inferences from the almost total absence of earlier trading by the defendants; their holdings were restricted after the IPO until October

**342**

1998. Contrary to the plaintiffs' contention, an enforced absence of trading history does not make sales suspicious. *See In re Vantive Corp.*, 283 F.3d 1079 (9th Cir. 2002), filed contemporaneously with this disposition; *see also Silicon Graphics*, 183 F.3d at 987. The absence of trading from November 1998 through January 1999 signifies little; as the district court observed, the timing of the limited sales here is more consonant with belief in an improved 4Q98 than with scienter of fraud. The stock sales, by themselves or in combination with all of the other alleged circumstances, thus do not provide the strong inference of scienter necessary for the successful statement of a claim.

■ Finally, the district court did not abuse its discretion in denying leave to amend the complaint. The plaintiffs even now offer nothing that would cure the deficiencies in their allegations. They assert that they would allege expert accounting "facts" but cannot controvert the terms of the provisions on which they have relied in argument. Their argument that they should be able to plead a "false exculpatory statement" by the defendants fails for lack of facts showing falsity in the first place, even if we assume that the doctrine would otherwise apply. The district court did not abuse its discretion in concluding that any amendment would be futile.

For these and the other reasons ably set forth by the district court, the judgment dismissing the plaintiffs' complaint without leave to amend is

AFFIRMED.

---

* The panel finds this case suitable for decision without oral argument. *See* Fed. R.App.P. 34(a)(2).